## Abraham Case v. Richmond E. Case and others.

*Deed: Bill to set aside: Deceit.* A deed in his own favor, prepared and obtained by a defendant, from complainant, an uncle who had stood *in loco parentis*, and had placed great confidence in him, and who was at the time supposed to be hopelessly ill, was set aside, the court being satisfied that it was not understood, when made, to be such a conveyance, or authorized to be made as such by complainant.

CASE *v.* CASE.

*Delay: Desire to avoid family litigation.* A delay to file a bill at once, was excused by the circumstances of the case, where complainant had been left in full enjoyment and possession, and treated by defendant as the real owner of the premises, and where the bill was filed shortly after defendant changed his course, and set complainant at defiance. In such cases, a desire to avoid family litigation is not to be disfavored, where no one is misled by it to his prejudice.

*Stay of proceedings: Rehearing: Newly discovered evidence: Cumulative testimony.* Proceedings will not be stayed to permit an application for a rehearing on the ground of newly discovered evidence, where the statement of the proposed new evidence is very vague, and indicates nothing more than cumulative testimony upon a subject on which several witnesses were sworn before, and moreover, shows that it cannot be fairly called newly discovered evidence.

*Application for stay of proceedings to apply for rehearing: Practice.* The application in such a case should be upon notice, and there should be a compliance with the conditions usually required to prevent injustice.

*Heard January 9 and 10.    Decided April 9.*

Appeal in Chancery from St. Joseph Circuit.

*O. F. Bean* and *H. H. Riley,* for complainant.

*R. R. Pealer, Arthur Brown* and *B. F. Blair,* for defendants.

CAMPBELL, J.

The object of the bill in this cause, was to have set aside a deed claimed to have been obtained by Richmond E. Case from complainant, when the latter was sick, and did not understand the purport and effect of the transaction. The deed conveyed absolutely, and without condition or reservation, all of the real estate of complainant, consisting of a farm owned and occupied by him, in St. Joseph county, Michigan, and a tract of land in Ohio. The deed was made April 18th, 1867, and signed by complainant and his wife Lydia, who is now deceased, and purported to be in consideration of two thousand dollars. Nothing was paid by way of purchase money, but defendant, Richmond E. Case, executed a bond in a penalty of one thousand dollars, running to the grantors, conditioned for their support. Complainant repudiates the bond and deed as invalid, the former as never having been agreed upon, or delivered to,

or accepted by him, and the latter as not having been his voluntary intelligent act, as a conveyance. Betsey Bucknell is brought in as mortgagee from Richmond E. Case, and Milligan as a tenant.

There is a good deal of testimony which has no very direct bearing on any material issue; and the most material testimony is not harmonious. On some points it cannot well be reconciled. Upon most of the collateral matters, there is no great disagreement.

Complainant is the uncle of Richmond E. Case, and the latter seems to have been in his family from infancy until he grew up, complainant having no children of his own. In 1856, complainant, who had come into the state about a year before, purchased and went into possession of the farm in St. Joseph county. It had been originally purchased in the name of Richmond E. Case, but was deeded to complainant. Whether the payments all came from him, or from Richmond, in whole, or in part, is disputed, but is not material, except possibly as indicating a reason which might have weight in determining the action of complainant afterwards. The parties, before the conveyance, were on very intimate terms, and had never had any formal settlement of accounts. There seems no reason to doubt, that complainant regarded Richmond as his probable heir, and their dealings were no more precise than is customary among near relatives. The evidence shows that complainant had spoken of Richmond as if he would have the farm when complainant had done with it. Defendant claims he had desired, and offered to convey it,—he not even desiring security for his support, but his wife objecting, unless security should be given. This is denied by complainant. Defendant swears, as well as other witnesses, that complainant had some time previously contemplated making a will. The conversation in regard to conveying to defendant, in which security was

referred to, is stated to have been not very long before the deed was actually made. The previous conversations were said to have been confined to the Michigan farm. On this occasion, defendant includes the Ohio land in the project. He says one thousand dollars was mentioned in conversing with complainant about the bond. But he does not say that sum was agreed upon, or that any terms were fixed, after the wife insisted on security, or that she, or any one, determined that a personal bond would be security, or what should be its terms. It does not appear, if defendant's account is accepted, that there had been such an arrangement as would enable any one to shape the papers without further instructions. If complainant is correct, there was no arrangement at all. The answer does not aver there had been any previous agreement, or any thing more than an intention, and does not aver, in any way, that the bond had been agreed upon, or thought of, before the time of its execution. The averments are more consistent with the idea that nothing had been previously determined on, and the burden of the answer is chiefly, that the deed was made because defendant was equitably the owner of the Michigan lands, and had in various ways befriended complainant. If any such arrangement had been talked of, it was not as one to be made in case of sickness, or impending death, but was to take effect at all events.

Upon a careful review of this portion of the case, we are satisfied that the complainant never seriously contemplated, or agreed, to make any transfer of his property, to become operative during his life, or came to any definite determination, before the time when the papers were executed, how he would dispose of it at all, beyond the general design of giving defendant the ultimate inheritance. It was a homestead in which the wife had concurrent rights, and it appears plainly that it was not likely any attempt would

be made to disregard them. Complainant had never ceased to manage the farm as his own, and nothing had occurred to render it likely that he and his wife would desire to leave home and become inmates of another family. There is no testimony tending to show that their continued occupancy of the land was ever talked of as a part of the arrangement whereby they were to lose the title. The probabilities, and the conduct of all the parties, are decidedly against the idea that such a transaction as took place, had ever been decided upon before.

This is rendered more apparent by the fact that there was a conversation between defendant and Mr. Arnold, the notary, on the way down to complainant's house, or about the time they set out, as to why a will was not to be made, rather than a deed, and defendant referred to the expenses of probate as a reason why a deed was preferred. Mr. Arnold was made to understand, from that and preceding conversations he had with complainant, that the arrangement, whatever form it might take, was essentially testamentary in its purpose.

It would be useless to attempt to reconcile all the testimony concerning the transactions at the house. Arnold, who testifies with much caution, is corroborated in the most important particulars, by circumstances about which there can be no great dispute, and we think there can be no reason to doubt the material facts on which he gives his relation.

The condition of complainant is the first thing to be considered. There is some very positive testimony on the defense which, if true, would tend to show complainant was not, on this occasion, either very sick or very feeble. The conduct of all the parties at the time shows this cannot be true. It appears beyond dispute that complainant had desired Arnold to be the person who should prepare

such papers as he should make, and had consulted him before about a will. Whether he at this time sent for him, or whether defendant assumed to do so upon his own motion, is not agreed. Complainant denies it, and defendant claims to have acted on hearsay. But it was evidently understood that Arnold was necessary to satisfy complainant, and that complainant had confidence in him, and that he was needed not merely as an acknowledging officer, but as a draughtsman. No such care in choosing a conveyancer would be needed, if nothing was desired but an ordinary conveyance, and this circumstance is important as bearing upon the real character of the arrangement. But, whatever the papers were to be, if complainant sent for him, Arnold was expected to act for the complainant as his adviser in drawing them.

But Arnold himself understood from defendant that nothing was contemplated but a plain deed on a printed form, to save probate expenses. He was not, therefore, informed that any thing was expected of him which would require care or vigilance. When he arrived at the house, although he saw complainant in his bedroom, he remembers no conversation with him about the papers, and thinks there was none. He received all his instructions from defendant, and supposed every thing had been arranged beforehand. While defendant testifies there was a conversation as to whether there should be a will or a deed, he does not show any consultation as to its terms, and agrees with Arnold that he himself gave directions as to its tenor. When the deed was drawn up, it was not read or explained to complainant. Defendant says the written part of the deed was read to him, which would embrace nothing material beyond the description and parties, if all read. Arnold's recollection is, that it was not read or explained at all. Complainant signed and acknowledged it, and said it was

just as he had always intended it,—that he intended Rich-
mond should have his property when he was done with it;
that he had long contemplated this and was glad it was
done.    He wanted it fixed so that Richmond should have
his property.  Mrs. Case signed and acknowledged the deed
in the other room.    Defendant took it up from the table
and kept it.    After the deed was executed, defendant said
he wanted a bond drawn up for the support of complainant
and his wife during their lives, and this was done at the
dictation and direction of defendant, without any consultation
with complainant or his wife, and without any subsequent
explanation.    The penalty was put at one thousand dollars.
The property was worth several thousand dollars, and
the bond was not secured.    The bond was not shown
or made known to complainant, and it is disputed whether
it was delivered at all, as it was not formally delivered to
any one.

   While Arnold detected nothing in the appearace of com-
plainant that indicated any lack of capacity beyond what
he says would be incident to such a feeble state of body,
he supposed he was merely carrying out a previous arrange-
ment which was well understood.    But the whole course
of events shows that if complainant had been doing some-
thing not previously agreed upon, he could not have been
in such a condition that he was able to, or did in any way
consider or weigh what was going on.    It is incredible, if
so, that he should have sent for a particular person with
whom he had previously consulted about a will, and whose
aid he especially insisted on, and then given him no
instructions, and asked no questions, and taken no pains to
see that all was properly done.    There is nothing in the
case raising any probability that he had ever intended to
strip himself absolutely and unconditionally of all his estate,
before his death.    There is very strong reason to believe

he had long intended to devise his property, or most of it, to defendant. Such a will would be short and simple, and would need no long instructions. But an arrangement whereby he was to give up all his property and strip himself and his wife of all they possessed upon receiving security for support, would require much care; and the terms and conditions, as well as the amount and kind of security, would need sound advice and mature reflection.

If he supposed the paper to be a will, there was nothing to undeceive him. The formalities of execution are not very unlike, and he was not a professional man who would be quick to see the small difference. His wife did not sign in his presence, nor until after he had acknowledged the execution by himself, which was a departure from general custom, which usually makes both signatures precede any acknowledgment of a deed. He was not informed that any bond had been or was to be executed, and made no inquiry on the subject, and expressed his satisfaction with the deed, as if no further action was to be had. This all indicates either that he supposed the instrument to be a will, or else that he was more affected in mind by his disease than was supposed by those present. There is very much reason to believe this latter was the true explanation. He swears himself that he had no recollection of what took place, beyond a very vague one, and it it is difficult to reconcile his conduct at the time, whether the paper was supposed to be a deed or a will, with what would be expected from any one in his full senses. The course taken by all of those present, was one showing they did not consider it prudent to disturb him very much. No one supposed him to be at all insane or delirious. But his conduct cannot be explained on any hypothesis that he could have supposed the conveyance to be an absolute and present grant,—either with or without security,—except upon the

supposition that he was not using his faculties actively and with understanding; and ·he must have been so weak as to be nearly passive, or else his mental powers must have been somewhat obscured, as they often will be in such attacks as his, when the difficulty may not always be recognized, and may not extend very far.

If complainant was not supposed to be near his end, it would be hard to find an explanation of the course of defendant at that time, that would relieve him from grave censure.   But there are many things which tend to show that, assuming complainant would not recover, it seems to have been taken for granted that it could make no great odds whether his wishes were carried out by a deed or a will.   While this would not be justifiable without his intelligent desire, it might have been done without any evil design.   It would not make the transaction legal, but it would be less blameworthy.

Without attempting to settle all of these difficulties, we have no doubt whatever, upon the testimony, that the deed in question was throughout prepared and obtained by the defendant, in whom complainant had complete confidence, during a severe and apparently dangerous illness of complainant, and that complainant did not understand the real effect of the conveyance, and had not authorized or desired it to be made to that effect.   We think it cannot be sustained.

Complainant has not waived any of his rights.   He complained at once upon his recovery, and having exercised full ownership and control until very shortly before the bill was filed, there was enough in the conduct of the defendant, and in the proper effect of their peculiar relationship, to explain the delay in prosecuting.   He was not disturbed in the use of the farm, and the correspondence during his absence, and the mutual conduct of complain-

ant and defendant both, warranted the inference that defendant did not dispute that complainant had substantial rights in the property which he could not have had if the deed was valid. It was not until very shortly before the bill was filed that complainant was really set at defiance; and the previous dealings of the parties were not calculated to impress on him the necessity of urgency in prosecuting. There is nothing which shows that defendant has been misled by the forbearance, and there is much in the relations of these persons to justify a very great desire to avoid litigation.

We think the circuit court came to a correct conclusion, and the decree must be affirmed, with costs.

CHRISTIANCY, CH. J., and GRAVES, J., concurred.

COOLEY, J.

The bill in this case is to have a conveyance of lands set aside and declared void, on the ground that it was procured by defendant while complainant, the grantor, was in a state of such mental feebleness and imbecility, caused by disease, as not to be aware of what he was doing.

There are very peculiar circumstances surrounding the case. Defendant is the nephew of complainant, and all the testimony shows that up to the time of the alleged fraudulent transaction he had treated complainant with the utmost kindness, had in many ways been of essential service to him, and that he had assisted complainant to purchase the chief and most valuable portion of the lands conveyed by the deed. The evidence also makes it very clear that, as complainant had no children, and his relations with defendant were most intimate and friendly, the latter was the natural object of such bounty as he might

have to bestow, and that his purpose had been in some form to make him a gift of these lands. And the testimony introduced on the part of complainant shows that if any fraud has been practiced upon him, it consists in procuring him to execute a deed which he supposed was a will of the same property to the same person. As complainant was at the time quite an old man, and defendant undertook to provide for his support during his life time, and the cost of this would be at least equal to the income from the lands, the inducement to any fraud was so slight as to make any purpose to perpetrate it extremely improbable.

Under these circumstances, I think a case of fraud ought not only to be very clearly made by the bill, but the same case ought to be clearly established by the evidence, before we should affirm its existence by our decree. I have been unable to find that this has been done here. That complainant was in a state of mental unconsciousness when he executed the deed, is not only not established, but is clearly disproved, and the case relied upon in the bill consequently falls to the ground.

If there has been any wrong on the part of defendant in this transaction, it consists in obtaining the deed by means of the confidential relations existing between the parties, and of the confidence *reposed in* him by complainant, without making the full explanations which such relations and confidence demanded and required. But these are matters in no way alluded to by the bill, which treats the case in all respects as if the parties were strangers, and were dealing with each other on equal terms, except as the complainant's mental unconsciousness prevented. The confidential relations, therefore, cannot form the basis for relief, and I can discover no other. I am consequently of opinion that the decree should be reversed.

Subsequently, April 29, 1873, an *ex parte* motion was made on behalf of the complainant, for a stay of proceedings, to permit an application for a rehearing upon the ground of newly discovered evidence.

*Arthur Brown,* for the motion.

CAMPBELL, J.

A stay of proceedings is sought with a view to an application for a rehearing, based upon a showing of newly discovered evidence, expected to be obtained from Philinda Shaft, a witness residing in Kansas.

The excuse for not obtaining this evidence before is, that soon after the bill was filed, defendant had some correspondence with Mrs. Shaft, but failed to receive answers to some important letters written to her, as well as to letters written to learn where she was to be found. A further reason given is, that he was given to understand that she was to be called for the complainant, and therefore omitted to take any further measures to secure her testimony.

The statement of what she will probably swear to, is very vague, and would indicate nothing more than cumulative testimony upon a subject on which several witnesses were sworn before. But, apart from this objection, the testimony cannot be fairly called newly discovered evidence. It all turns, so far as it is material, upon the circumstances attending the execution of the conveyance which was set aside by the decree. Defendant himself was present at the transaction, and knew from the beginning what other persons were there. Mrs. Shaft was a witness to the deed, and was, therefore, a person who might naturally be supposed to be an important witness concerning its execution. If defendant was misled into supposing she would be called on the other side, he should have taken some step to pro-

cure her testimony, if he desired it, after the complainant failed to have her examined. The facts set up in his petition, show that it could not have been difficult to find her, by the use of common diligence, and the omission to do so, can only be referred to satisfaction with his case as he had already shaped his proofs, or to some doubt whether her testimony would help him. In either case, he must be precluded from what would be experimenting with the courts. Litigants must always present their cases as they are willing to stand by them, unless prevented from obtaining testimony without neglect or fault. What they leave out, of their own will, they cannot ask to have let in on a motion for a new hearing.

The application must be denied for these reasons. It is proper to say, however, that in such a case there should have been notice of the motion, as well as a compliance with the conditions which are usually required to prevent injustice that might occur, by opening or delaying action under decrees involving important rights that might be lost or seriously impaired by mere lapse of time.

The other Justices concurred.