## William H. Moote v. John Scriven.

*Contracts: Time: Delay: Reasonable time: Equitable relief.* Where one has received the title of a purchaser upon a statutory foreclosure under an arrangement with the owner of the equity of redemption to give him further time to redeem or to purchase back, time is not so far of the essence of the contract as to prevent its enforcement upon equitable terms within a reasonable time after the lapse of the period specified.

*Terms of granting equitable relief after delay: Interest.* And where the arrangement was to pay twelve and a half per cent. interest to cover original expenses and trouble, and the extra two and a half per cent. did not exceed $30, payment in accordance with this arrangement was imposed as terms of granting the relief sought.

*Specific performance: Oral agreement: Part performance.* A verbal agreement to advance money to purchase lands and to remove incumbrances on them, and ultimately to transfer them to another on repayment, where the latter was all the time in possession, and did no act to his own prejudice which would amount to part performance, will not be specifically enforced in equity.

*Foreclosures: Chancery sales: Purchaser: One holding relation of mortgagee: Previous equities.* One who has received the title to lands under an arrangement which in legal effect made his rights no more than those of a mortgagee, is not thereby precluded from becoming a purchaser at a chancery sale on the foreclosure by a third person of another mortgage, and holding the title like any other purchaser; and such a purchase would cut off all previous equities of the other party.

*Chancery appeals: Testimony taken in open court: Stenographer's notes.* The stenographer's transcript of his notes of the evidence in a chancery cause where the testimony was taken in open court, which has been merely filed in the cause and a copy thereof sent up with the return without being authenticated by the circuit judge as a case settled as required by the statute, will not be considered on appeal as the evidence in the cause.

*Heard April 4. Decided April 11.*

Appeal in Chancery from Clinton Circuit.

This cause coming on to be heard on appeal at the October term, 1875, of the supreme court, it appeared that the testimony was taken in open court, and that what was returned and treated as the evidence in the cause was but a copy of the stenographer's transcript of his notes of the evidence, which was merely filed in the cause and had been sent up with the return without being in any way authenticated as a case settled as required by the statute. This the court declined to consider as the evidence. And no case having been settled, and the statutory period having elapsed, the appeal was dismissed with leave to move for a rehearing at the circuit. A rehearing having been granted, the cause was again brought up on appeal, with the evidence properly settled and authenticated, and was heard on the merits at the April term, 1876.

*H. Walbridge* and *J. O. Selden,* for complainant.

*O. L. Spaulding,* for defendant.

CAMPBELL, J:

Moote filed his bill to redeem from Scriven two parcels of land in Clinton county, one being the northeast quarter of section eighteen, and the other the southwest quarter of the southeast quarter of section seven, in town seven north, of range two west. The bill claims that Scriven's interest is only a mortgage interest, and offers to repay the amount due.

The equities concerning the two lots are not identical, although asserted as arising under a single train of dealings. The court below held that a right of redemption existed in the parcel of forty acres on section seven, but not on the rest. It will be proper to deal with this first.

On the 6th day of May, 1871, the redemption of this lot was running out on a statutory foreclosure of a mortgage controlled by Josiah Upton. Upton had made a partial arrangement to transfer his title to Samuel S. Walker and

one Cutler, but on the application of Moote, and for his advantage, he agreed to transfer it to Scriven, who was to give Moote time upon it.    Scriven paid one thousand two hundred and ninety-eight dollars and ninety-four cents to Upton, besides some expenses, and received conveyances which gave him title in fee simple.    He agreed to wait on Moote, as he says, one year, and as Moote claims, indefinitely, in consideration of twelve and a half per cent. to cover interest and expenses.    Scriven claims the transaction was an agreement for a resale.

There is some difficulty in supposing that Scriven or Moote understood this to be a mortgage, in the proper sense of the term.    No obligation rested on Moote to repay Scriven's advances, and he retained possession of the premises and used all that he got from them for his own advantage, without ever accounting for either principal or interest. No payment was ever made to Scriven in reduction of the debt.    And it does not appear in any part of the case that the parties, after the first purchase by Scriven, made or recognized any definite bargain, except that Scriven was desirous of having a written contract, and Moote was not disposed to make one.    There can be no doubt from the whole case that Moote was to have the property back at some time and on some terms, and the answer admits a bargain to sell on one year's time.    As no further incumbrances were bought up to protect this tract, and the statement in the answer does away with any difficulty under the statute of frauds, we think that time was not so far of the essence of the contract as to prevent its present enforcement upon equitable terms.    The court below, in its decree, allowed Scriven only seven per cent. simple interest, and allowed nothing for his expenses.    This was not equitable.    We think the twelve and a half per cent. was not too large an allowance for the interest and original expenses and trouble about the business, as the extra two and a half per cent. did not much exceed thirty dollars, and that ten per cent. interest should be allowed annually thereafter.    On these

terms we think he should be allowed to obtain back the premises. The whole case is so involved in contradictions that it is not easy to tell just what was agreed upon, and probably there was no very definite understanding. But there is no doubt at all that Scriven never would have advanced his money on less favorable terms, and without that advance Moote would have lost his land entirely. An agreement to sell is more in accordance with all the facts than a mortgage, and it would be grossly inequitable to allow a redemption on any conditions less favorable to Scriven, who has not been dealt with very fairly, and has received no advantage from the transaction, which was not of his own seeking.

The other property is very differently situated. In April, 1871, Scriven held a claim against Moote secured by a chattel mortgage on growing wheat upon both these tracts. Moote had made this mortgage in February, 1871, on the assurance that he had a good title to the land. As a matter of fact his title to the one hundred and sixty acres on section eighteen had been sold on execution and the redemption had expired, so that Moote had no further interest in the land. The execution title was held by one Gibbs, who also had a subsequent mortgage on the premises. The time for redemption by judgment creditors had not yet passed, and Moote confessed judgment in favor of Scriven, who then redeemed from Gibbs, but was in turn cut off by a subsequent redemption by one Babcock in the interest of Gibbs. An arrangement was then made between Moote and Scriven, whereby the latter was to purchase the title and give Gibbs a mortgage for the amount due him, Moote giving his note for the debt. It was agreed that upon Moote's repayment of the advances and interest, Scriven should convey his title. Upon the question of time there is a direct conflict. Scriven says the payments were to be made in two years. Moote claims the advance was to be repaid without limit of time. From time to time thereafter Scriven had to advance further sums to pay off the Gibbs mortgage and other incumbrances

and claims, until his advances had reached a large sum, and Moote, though holding the land and getting the proceeds, had done nothing to reduce the debt, and had not paid interest.

Under these circumstances, in April, 1874, the lot on section eighteen was sold on some earlier mortgages on chancery sales, and bid off by Scriven. Moote claims that this purchase was also made under an arrangement for his benefit, and that the whole interest of Scriven is that of a mortgagee.

Upon what took place before the chancery sales there is a downright contradiction between the parties, which is not much cleared up by the other witnesses. Moote makes it out a continuance, though by special arrangement, of the old arrangement whereby Scriven was to advance money and hold security on the lands. Scriven denies it entirely.

The original arrangement bears no resemblance to a mortgage. Moote had no interest in the land whatever. The dealings amounted only to a verbal agreement with Scriven to advance money to purchase lands and to remove incumbrances on them, which he was ultimately to transfer to Moote on repayment. There was nothing which could have been enforced by specific performance, as Moote was all the time in possession, and there was no act of his to his own prejudice which would amount to a part performance. He had never been able to perform, and by reason of his neglect Scriven had been compelled to make advances beyond any agreement for his own protection. The whole circumstances render it very improbable that he would go on any further in this way. He was obliged to buy in the property at the chancery sales to save what he had already paid out, and even if he had been a mortgagee, it is not easy to see why he could not buy up such a title if he chose and hold it like any other purchaser, inasmuch as it was a legal sale of the mortgagor's equity, which any one could buy unless estopped.

Without discussing the conflicting proofs, there is not

only no evidence of a bargain conforming to the statute of frauds, whereby Moote was to have any interest, but there is not, as we think, convincing proof of any bargain at all. We think that whatever may have been the state of things before, the chancery sale cut off all previous equities, but we do not think that the previous transactions indicate any very strong equities. The dealings throughout show Moote to have been slack and entirely disregardful of his obligations; and Scriven does not appear to have acted unfairly or oppressively in any instance. It is not surprising that his patience had become exhausted. He was under no obligation to consider his own rights subordinate to the convenience of Moote.

The decree below, refusing redress to Moote concerning any supposed rights in section eighteen, must be affirmed, and the decree as to the forty-acre lot on section seven modified so as to require Moote to pay interest at the rate of ten per cent. from May 6th, 1871, on the amount of one thousand two hundred and ninety-eight dollars and eighty-four cents, and also two and a half per cent., or thirty-two dollars and forty-six cents, with interest at the same rate of ten per cent., Scriven to recover costs of both courts.

The other Justices concurred.