### TISMAN v. TISMAN.

1. DIVORCE—BILL OF REVIEW—NEWLY DISCOVERED EVIDENCE.
   On the ground of newly discovered evidence, complainant in divorce proceedings is entitled to present a petition for leave to file a bill of review more than one year after the entry of an adverse decree, the question being governed by the exception stated in Chancery Rule 27, which requires such petition to be filed within a year, except for newly discovered evidence or on sufficient cause shown.

2. SAME—PETITION FOR LEAVE TO FILE BILL OF REVIEW.
   The granting or denial of a petition for leave to file a bill of review is discretionary and may be reviewed only for abuse of discretion.

3. SAME.
   Where complainant, a widow, married defendant on acquaintance of about one day, and immediately following the ceremony returned to Chicago, where she had been living, to dispose of her effects, remaining for several months, and becoming estranged from her husband, who later filed a bill for divorce, and made a complete settlement and satisfaction of the claims of complainant to his property to induce her to withdraw her defense, and where a divorce was denied in that cause but subsequently

granted to the husband on a cross-bill that he filed in her
suit for separate maintenance, it was not an abuse of
discretion to deny complainant's petition for leave to file
a bill of review based on the discovery of evidence of
adultery committed by the husband, the testimony show-
ing that he had remarried since the entry of the decree,
and that no equitable considerations required the inter-
position of the court.

Appeal from Wayne; Hally, J. Submitted April 11,
1913. (Docket No. 42.) Decided July 9, 1913.

Bill by May Tisman against George F. Tisman for
separate maintenance. Defendant was granted a di-
vorce on his cross-bill charging extreme cruelty. From
an order denying complainant's petition to file a bill
of review, she appeals. Affirmed.

*McHugh, Gallagher & McGann (Gustav E. Beerly,*
of counsel), for complainant.

*Joseph W. Donovan,* for defendant.

STEERE, C. J. In this suit complainant has appealed
from an order of the Wayne county circuit court in
chancery, dated January 7, 1913, denying her petition
for leave to file a bill of review in a suit instituted by
her on January 27, 1911, against defendant for sep-
arate maintenance, charging him with nonsupport,
extreme cruelty, and adultery, and in which, on Octo-
ber 27, 1911, her bill was dismissed and a decree for
divorce granted to defendant George F. Tisman on his
cross-bill charging her with extreme cruelty. At the
time this petition was filed, on December 7, 1912, over
a year after the parties had been divorced, defendant
had remarried and was living with his third wife and
a child by a wife who preceded complainant in their
home in Detroit.

The matrimonial alliance between complainant and
defendant appears to have been a case of married in

haste to repent in haste. They first met March 21, 1909, were joined in the bonds of holy matrimony March 22, 1909, went to a ten cent theater, drank some beer together after the wedding, at her suggestion, and separated that afternoon, temporarily as was then supposed, and never lived or cohabited together as husband and wife. The respective ages of the parties are not disclosed, but each had been previously married. Their meeting was brought about through the supposedly kindly offices of a mutual acquaintance and his wife, who, being advised that each was inclined to matrimony, arranged for the parties to meet at their house, calling complainant from Chicago for that purpose by a letter stating that they had a prospective husband for her.

Complainant was a widow, residing in a flat in Chicago, where she had some furniture and other personal property. After her marriage she hastened back the same day, with consent of defendant, avowedly to dispose of her property there preparatory to changing her residence to live with him in Detroit. Her next appearance in Detroit was on June 10, 1909, when an interview between the parties, the circumstances of which are in dispute, resulted in their permanent estrangement and subsequent divorce proceedings.

On March 23, 1909, the day after she left, defendant wrote complainant, in reply to a letter from her, urging that she "rush things as much as possible" and return; that his daughter was ill and he was anxious for complainant to come and care for her. He wrote her again urging her to return on March 26th, April 2d and 5th, saying in the last letter:

"Now, if you can't get here by Saturday, April 10, I will have to hire a housekeeper. Let me know by return mail, but it is to be hoped that you will be ready to start for Detroit by the time this letter reaches you."

On April 10th he wrote that he had not seen or heard from her, not to sell her property, and that he did not want to hear from her again. On April 14th, in reply to a letter from her, he wrote:

"Your conduct has been such that I never could forget the unkind love that you have showed toward my child when it was sick and I begged of you to come and look after her."

In the meantime he hired a housekeeper with whom it is charged he became criminally intimate, to which fact his subsequent conduct and rejection of complainant is ascribed. Complainant's frequent letters to him explaining and excusing her delay in returning did not placate him, and on April 21, 1909, he wrote in reply to a letter from her:

"I have the most bitter feeling toward you, so save your time and postage as I don't want to hear from you any more."

On June 10 or 11, 1909, complainant went to Detroit to the house of the friends who had introduced her to defendant and from there went and interviewed him; matters were talked over between them; she claims he agreed to receive her as his wife and shortly thereafter declined to do so, refusing to give her even enough money to pay her fare back to Chicago. He claims she made a demand on him for money; that he told her his home was open to her; but she demanded a settlement and stated she had arranged with her Chicago lawyer to attend to it for her if necessary, whereupon defendant refused to comply with her demands or to support her. That an adjustment on a financial basis was under discussion is evident. She testifies:

"I then offered to live with him as his wife. * * * He said to me, 'Will you sign the papers for $50 or $75?' and I said, 'No.' A few minutes later he said, 'Will you settle for $50?' and I said, 'I will not settle until I think this thing over;' and then he said he

would see me next day. I took the train back that night for Chicago."

On August 3, 1909, defendant filed a bill for divorce, with an affidavit of complainant's nonresidence, preparatory to proceeding by substituted service, when she, learning of this suit, returned to Detroit and employed counsel to protect her interests. She was thereafter personally served, in Detroit, with a certified copy of the bill of complaint, affidavit of nonresidence, and order of publication. She appeared in the suit, by her solicitor, filing an answer, cross-bill, and petition for temporary alimony.

While complainant was in the city of Detroit, negotiations were entered into between the parties for a financial settlement of their matrimonial affairs; each being represented by counsel. As a result a stipulation of settlement was entered into on August 11, 1909, signed and accepted by the respective parties and their solicitors, providing for the payment to her of $150 in full of all her claims against defendant in said cause. She also at the same time signed a release of—

"All her claims against said George F. Tisman for past, present, and future support and maintenance, as his wife, and likewise all her claims of dower in and to any and all property now owned, possessed, and held, legally, equitably, or otherwise, or which may be hereafter owned, possessed, and held, by said George F. Tisman, and likewise all her claims of every kind, nature, and description whatsoever, past, present, or future, against said George F. Tisman, as his wife, or otherwise."

This instrument was approved and witnessed by the solicitor who represented her at that time, and who appears for her in this cause; who also, as a notary public, took her acknowledgment of its execution.

Though these papers were signed and acknowledged on August 11, 1909, it is conceded that a complete settlement was not reached until October. She went

back to Chicago in August and returned to Detroit in October, at which time she withdrew her answer and cross-bill to defendant's bill for divorce and was paid the money previously agreed upon. She left for Chicago the same day, believing, as she states, that "matters were so situated that he could get his divorce." He endeavored to do so, but, after hearing the case, the court dismissed his bill on March 3, 1910.

Although defendant had previously advised complainant to save her postage, as he did not want to hear from her any more, she manifestly wrote him further, and on June 5, 1910, in answer to a letter from her, he wrote that he was "sorry that we have had such trouble, * * * and, if you want to sell your furniture and come on and live with me, all well and good and I will try and do my part." Complainant thereafter went to Detroit and called at defendant's home, which she found in charge of a housekeeper, who did not give her a cordial reception. An interview with defendant terminated without reconciliation. She testifies to offering to live with him as his wife and care for his home, but that, owing to his relations with and the influence of his housekeeper, he rejected her. He testifies that, after writing the letter on June 5th, he had thought it over, and, remembering how she had acted, he telegraphed her not to come, but she came right on, and, after an interview in which she proposed conditions which were not acceptable, he declined a reconciliation. She thereupon went back to Chicago and on January 27, 1911, returned to Detroit and filed her bill of complaint against defendant for separate maintenance, which resulted, whether rightfully or wrongfully, in her bill being dismissed and defendant being granted a decree of divorce on his cross-bill as stated. On the hearing of this suit it was charged, and testimony was introduced by complainant to show, that defendant was guilty of adultery with his housekeeper, whom he had employed shortly after

he was married to complainant owing to failure of the latter to return when expected. Complainant had subpœnaed this housekeeper as a witness, but she failed to answer the subpœna, and an officer with an attachment was unable to find her. Defendant positively denied any improper relations with the housekeeper or any knowledge of where she was at the time of the hearing.

After obtaining his divorce, defendant lost little time in securing another wife. The housekeeper objected, and claimed he had promised to bestow that honor upon her as soon as he was free from his previous entanglements, and, when he married another, came from under cover with the proverbial fury of the woman scorned, and furnished complainant's solicitor with an affidavit of defendant's perfidy which, if true, brands him as a low and licentious criminal and perjurer. On the strength of this affidavit complainant applied for a rehearing on October 16, 1912; the decree having been granted October 27, 1911. This application was heard before another judge of the Wayne county circuit court, in chancery; the judge who granted the decree of divorce having in the meantime retired from the bench and become solicitor for defendant. In denying the petition the court said:

"This petition has been filed to set aside that decree and grant a rehearing. The petitioner has presented a very strong affidavit which would be entitled to very grave consideration were it not for the intervening rights of an innocent third party. Since the decree was given, the defendant has remarried and is now living with this wife. It should be a very extraordinary situation which would justify a court in disturbing this relation because of the consequent injustice to one who was not a party to the above proceeding. Such a situation does not now exist, and the prayer of the petition will be denied."

Thereupon, on December 7, 1912, this petition for leave to file a bill of review was filed and denied on

January 13, 1913. From the order of denial this appeal is taken.

Complainant's counsel propose and argue, as material and controlling in this case, the three following questions:

(1) Does complainant possess the legal right at this time, and under the circumstances of this case, to file a petition for leave to file bill of review?

"(2) Does the settlement, as made with complainant, constitute an equitable division of her husband's property, and a fair, just, and suitable provision for her, in lieu of her dower and other claims against her husband's estate?

"(3) Are the facts, as established in complainant's petition for leave to file bill of review, such as to entitle her to file and maintain a bill of review?"

As to the first question, it is contended by counsel for defendant, as a matter of law, under Chancery Rule 27 and Act No. 299, Pub. Acts 1909, limiting the time of appeal, that the court has no power to entertain a petition for leave to file a bill of review at this time. This is not an appeal from the decree rendered herein but from the order denying complainant's petition. It was taken within the requisite time after the order denying such petition was rendered. Rule 27 limits the time for filing a bill of review to that allowed for bringing an appeal, "except upon newly discovered facts or evidence, unless upon reasons satisfactory to the court." This petition is based chiefly on the claim of newly discovered evidence. The rule is reviewed in *Barnes* v. *Kent Circuit Judge,* 97 Mich. 212 (56 N. W. 599), and construed more or less in *Stockley* v. *Stockley,* 93 Mich. 307 (53 N. W. 523); *Sheldon* v. *Hawes,* 15 Mich. 519; *Mickle* v. *Maxfield,* 42 Mich. 304 (3 N. W. 961); *Clark* v. *Huron Circuit Judge,* 40 Mich. 166; *Thompson* v. *Jarvis,* 40 Mich. 526; *Ryerson* v. *Eldred,* 18 Mich. 490; *Id.,* 23 Mich. 538; *Taylor* v. *Boardman,* 24 Mich. 287; *Id.,* 25 Mich. 527; *Case* v.

*Case,* 26 Mich. 484; *Moote* v. *Scriven,* 33 Mich. 500; *Brewer* v. *Dodge,* 28 Mich. 359; *Maynard* v. *Pereault,* 30 Mich. 160; *Sanford* v. *Haines,* 71 Mich. 116 (38 N. W. 777); *Dodge* v. *Northrop,* 85 Mich. 243 (48 N. W. 505); *Noeker* v. *Howry,* 119 Mich. 626 (78 N. W. 669).

In *Sanford* v. *Haines, supra,* it is said:

"Under the rules, a bill of review should be filed within the time allowed for appealing, unless on newly discovered evidence, or when there has been some reason that is satisfactory for the delay."

Of the right of complainant to file and the court to pass upon the petition for leave to file a bill of review, there can be no question.

The granting or denying such petition was, however, a matter of discretion with the trial court. *Farmers' Bank* v. *Quick,* 71 Mich. 534 (39 N. W. 752, 15 Am. St. Rep. 280); *Barnes* v. *Kent Circuit Judge, supra; Knapp* v. *Perry,* 117 Mich. 97 (75 N. W. 1135); 16 Cyc. p. 523.

In *Stockley* v. *Stockley, supra,* it is said:

"An application for leave to file a bill of review is the method employed to obtain a rehearing and to vacate a decree after its enrollment; but the results to be attained, and the facts properly to be considered, are the same as though it were a motion for a new trial, or a motion for a rehearing and to vacate a decree before its enrollment, and in like manner it addresses itself to the fair discretion of a court. In passing upon it, each case stands by itself, and is controlled by the circumstances surrounding it, and without reference to any other case. The power of the court in granting or denying it is largely discretionary, and is always to be exercised in view of the peculiar circumstances of each case, so as to effectuate substantial justice, and protect the legal and equitable rights of the parties. Unless this principle has been violated by the circuit judge through an abuse of the fair discretionary power with which he is invested, his decision should not be disturbed."

The inquiry is, therefore, whether the record dis-closes such an abuse of discretion as demands a re-versal.

Complainant's second contention is that the settle-ment entered into in August and consummated in Oc-tober, 1909, at the time she withdrew her answer and cross-bill to defendant's bill for divorce, does not con-stitute an equitable division of her husband's property and a just provision for her in lieu of dower and other claims against his estate. While that question is in-volved consequentially, it is not a proper ground for filing a bill of review at this time; no newly discovered evidence upon that subject is disclosed. There is no showing that the settlement was obtained by fraud or deceit or that defendant had more property than complainant then supposed. He is shown to be a work-man engaged with the Detroit Woodoleum Company, "making borders around rugs." At the time this suit was heard, he was earning $25 per week, but when he started at the work earned much less. He had bought a house and lot upon contract, on which he had paid $1,365, and yet owed about $1,000. He had one child, a girl about 9 years old. He is not shown to have been especially thrifty or prosperous. From time to time he borrowed small sums from his employers, and on August 11, 1909, when the settlement between these parties was pending, he borrowed $170. At that time complainant was in Detroit with full knowledge of his circumstances, so far as shown. She had employed counsel, appeared and filed an answer and cross-bill in defendant's divorce suit. She had taken ample time to "think this thing over." With everything ready to push this case to a final hearing and have her rights determined, she voluntarily made a full settlement of all her claims against defendant, with her counsel present to look after her interests and witness the papers she signed. When the amount agreed upon was

paid, she withdrew her defense and left for Chicago at once, expecting and believing that, as a result of her action, their relations were ended and "he could get his divorce."

That an unsuccessful attempt was later made to get together and assume the relations of man and wife does not defeat the validity of their contract of settlement, advisedly entered into, even though his ultimate refusal was the cause of its failure. Her subsequent suit for separate maintenance was not the result of any improvement in his financial condition, or any new discovery in that particular, but manifestly arose from his unexpected failure to get a divorce from her as they had arranged for and anticipated, followed by his vacillating and irritating conduct in accepting and rejecting her overtures. No impelling, equitable considerations arise in her favor. What rights she had were strictly legal rights arising from the bare fact of the marriage ceremony. They met for the first time one day, were married and separated the next, and never lived together as husband and wife. She did nothing for him, and he did nothing for her, after they separated, except to pay what was wrung from him by litigation. It can fairly be said, from this record, that neither of them entered into this hasty betrothal and practically contemporaneous, off-hand matrimonial alliance actuated by any worthy sentiments of regard or affection for each other. The record indicates that it was a money matter with her, and with him the temporary whim of one whose "unkind love" for the opposite sex is manifestly fervent but extremely migratory. Neither comes before the court with clean hands, and neither presents any claim for relief from nuptial disaster which specially appeals to the tender consideration of a court of equity.

It is asserted by counsel for defendant that "the record presented shows but a meager part of what

was heard before Judges Rohnert and Hally or at the three days' hearing." This record is made up of the pleadings, decrees, and orders of the court, the petition with certain affidavits attached, and such portions of the testimony as complainant's counsel saw fit to make a part of the petition, together with the answer of defendant to said petition.

The subsequently obtained affidavit of Mrs. Harriet Alice Reed, defendant's discarded housekeeper, setting forth his criminal relations with her and conduct in preventing her from responding to a summons from the court to appear as a witness, is most seriously urged as a controlling factor which it is an abuse of discretion to disregard. It points to conduct on the part of defendant and deponent proper for investigation in the criminal courts, if substantiated; but in this suit between private parties, and under the facts disclosed, we are not satisfied that a court of equity must necessarily, at this time, entertain a bill of review to set aside a settlement understandingly made on a business basis so long before. The affidavit is by a self-confessed *particeps criminis*. The source, time, cause, and motive of making and presenting this affidavit, as well as the extent to which it should move the court at this time and in this case, if true, are all proper elements for consideration by the trial court, and we are unable to conclude that court, which dealt with the case in its entirety, has so abused its discretionary powers as to demand a reversal of its order denying leave, at this time, to open the case and file a bill of review.

The order of denial is affirmed, but without costs.

MOORE, MCALVAY, BROOKE, KUHN, STONE, OSTRANDER, and BIRD, JJ., concurred.